UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ROY LEE PARKER,

                              Plaintiff,                          05 Civ. 1803 (PKC)(GWG)

              -against-
                                                                 <u>MEMORANDUM AND ORDER</u>
THE CITY OF NEW YORK, et al.,

                              Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, U.S.D.J.

              Plaintiff Roy Lee Parker brings suit against the City of New York ("City"),

former City Department of Corrections Commissioner Bernard Kerik, and Corrections

Officers Claudio Medina and Antonio Fernandez, alleging that defendants, acting under color

of state law, conspired to deprive him and did, in fact, deprive him of rights protected by the

Constitution.  18 U.S.C. § 241; 42 U.S.C. § 1983.  He also alleges various state law claims.

Specifically, Parker claims that, while being held in the custody of the City Department of

Corrections, he was assaulted by corrections officers and then falsely arrested and maliciously

prosecuted in connection with the incident.  Pre-trial discovery in this case has concluded.

Defendants now move for summary judgment on the state law claims and the section 1983

claims for false arrest, malicious prosecution, conspiracy, and violations of due process, and

some aspects of the section 1983 excessive force claim.  Defendants also move for summary

judgment on the grounds that the City and Kerik are not liable for the actions of Officers

Medina and Fernandez (collectively, "the individual defendants").

       I.      <u>Factual Background</u>

              In setting forth the facts, I accept non-movant Parker's version of the facts and

any facts proffered by defendants which Parker does not dispute.  I draw all reasonable

inferences in favor of Parker. In opposing summary judgment, Parker has submitted an affidavit and numerous documents. He also relies on the transcript of his March 21, 2006 deposition.

A. *The Events of June 28, 2001*

On June 28, 2001, Parker was produced at Manhattan Criminal Court, located at 100 Centre Street, on a scheduled criminal court matter, and was directed into a prisoner detention pen by defendant Officer Fernandez. (Pl. Rule 56.1 Statement ¶ 4.) Later that day, defendant Officer Medina retrieved Parker from the holding cell and removed him, without handcuffs, into the hallway known as the 12-2 corridor. (Id. ¶¶ 8-10.) Medina and Parker walked down the corridor to the front of the door which opened into Courtroom Part 60. (Id. ¶ 8.) Parker was thereafter informed by Medina that his criminal case had been adjourned to July 6, 2001. (Id. ¶ 11.) Parker then asked Medina to request a second call on his behalf so that he could submit some papers to the Court. (Id. ¶ 12.) Medina refused to do so. (Id.) Parker asked to see the area supervisor; Medina refused again. (Id. ¶ 13.) Parker alleges that Officer Medina then struck him in his left eye once, using his closed right fist. (Id. ¶ 17.)

Other officers, including Officer Fernandez, quickly arrived on the scene. (Id. ¶¶ 20-22.) Parker asserts that Officer Fernandez punched him in the upper body and face. (Id. ¶ 112; Jacobi Decl., Exs. J, M, N. ) Parker alleges that Officer Medina pushed him, causing him to hit his upper back against the marble wall and fall to his knees, landing face-down on the floor on top of Medina, who had also fallen to the floor. (Pl. Rule 56.1 Statement ¶¶ 18, 21, 24-25, 104, 107, 116.) According to Parker, while he was on top of Medina, his hands were together under his chest. (Id. ¶ 117.) The officers tried various methods to get Parker into restraints, including administering body blows and using batons to try to force his arms behind his back. (Id. ¶¶ 23-27, 113; Parker Dep. 124-26; Jacobi Decl. Ex. E.) Parker admits

that he resisted producing his left arm, but claims he gave up his right arm freely. (Parker Dep. 125-26.) According to Parker, the officers did not give him verbal instructions during the time they were trying to physically restrain him. (Id. 127.) Parker was placed in handcuffs behind his back. (Pl. Rule 56.1 Statement ¶ 119.) Parker alleges that his shoulders were injured as he was lifted by his arms off of the ground. (Id.)

After the incident, Parker was seen by medical staff at the courthouse (id. ¶ 46), at Riker's Island (id. ¶ 51), and at the Manhattan Detention Center (id. ¶ 52). According to an Inmate Injury Report completed after the incident, Parker suffered a superficial abrasion to his right eyebrow with swelling and discoloration, a superficial abrasion on the bridge of his nose, minor trauma, and abrasion to his right knee. (Jacobi Decl., Ex. E.) Parker asserts that he suffered back pain for one to two weeks after the incident. (Pl. Rule 56.1 Statement ¶ 122.) Fernandez and Medina were both treated for injuries sustained during the incident. (Id. ¶¶ 57-58.)

Parker asserts that the use of physical force by the officers was unprovoked and unjustified. Defendants claim that Officer Medina was only defending himself against Parker's attack, and that the force used by the officers was only that which was necessary in order to restrain Parker.

B. *The Charges Brought Against Parker*

On June 28, 2001, the day after the alleged assault, Parker was served with an infraction notice, charging him with assault on staff and other violations. (Id. ¶ 60.) Medina and Fernandez both submitted reports regarding the incident. (Id. ¶ 63.) On June 29, 2001, both the investigating supervisor and other supervisors recommended Parker's arrest. (Id. ¶ 64.) On July 5, 2001, an infraction hearing was conducted and Parker denied the charges.

(Id. ¶¶ 65-66.)  Parker was found guilty of all charges and sentenced to confinement in

punitive segregation.  (Id. ¶ 68; Parker Dep. 154-55.)  He challenged the disposition through a

special proceeding brought pursuant to Article 78 of the New York Civil Practice Law and

Rules, on the grounds that his due process rights were violated because he was not presented

with the evidence against him and the hearing was not taped.  (Jacobi Decl. Exs. Q, R.)  The

Article 78 challenge was heard by Hon. Leonard Bernstein.  (Jacobi Decl Ex. R.)  The petition

was sustained as to 120 days of the total 130-day infraction penalty time.  (Pl. Rule 56.1

Statement ¶ 79; Jacobi Decl. Ex. R.)

On July 10, 2001, Medina and Fernandez submitted administrative reports

relating to the June 28 altercation.  (Pl. Rule 56.1 Statement ¶ 132.)  On July 26, 2001, Parker

was arrested on charges of assault on staff and other offenses relating to the June 28

altercation, and processed at 100 Centre Street.  (Id. ¶ 72.)  Parker was arraigned on July 26

and was represented by a public defender.  (Id. ¶ 74.)  The matter was adjourned to await the

filing of corroborating depositions.  (Id. ¶ 75.)  Parker was never produced before the court to

answer the charges brought against him.  (Id. ¶ 137.)  On March 5, 2002, the charges were

dismissed on speedy trial grounds.  (Id. ¶ 85.)

C.  *Parker's Unrelated Incarceration and Parole Hearing*

Parker had entered the City Department of Corrections system on or about

November 2, 2000, following his arrest for, *inter alia*, criminal sale of a controlled substance

near school grounds.  (Id. ¶ 3.)  He was convicted of that crime in August 2001 and sentenced

to four-and-a-half to nine years in state custody.  (Jacobi Decl., Ex. Z.)  He was transferred to

state custody in September 2001.  (Pl. Rule 56.1 Statement ¶ 80.)  Parker was released from

state custody in October 2006.  (Oct. 27, 2006 Ltr. from Parker to the Court.)  Thus, at all

times relevant to the events described herein, Parker was detained in either City or state custody in connection with the drug charges.

In late 2004 and again in early 2005, Parker was interviewed in regards to possible early parole on his drug conviction. (Id. ¶¶ 90-91.) The Parole Board denied Parker an early release. (Id. ¶ 93.) The decision was based on Parker's extensive pattern of larcenous and drug-related offenses dating back to the early 1980s, including approximately 21 misdemeanor convictions, one youth offender felony conviction, and four prior felony convictions. (Id. ¶ 95.) Parker appealed the denial of parole and submitted an appeal brief on June 9, 2005. (Id. ¶ 97.) The Appeal Board affirmed the decision denying early release. (Id. ¶ 98.) There is no mention in either the Parole Board's decision or the Appeal Board's decision that they denied Parker early release because of the June 28, 2001 incident. (Id. ¶ 99.)

## II.    Summary Judgment Standard

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed. R. Civ. P. It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief. A fact is material if it "might affect the outcome of the suit under the governing law . . . ." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law. Vermont Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) (citations omitted).

When the moving party has met this initial burden and has asserted facts to demonstrate that the non-moving party's claim cannot be sustained, the opposing party must "set forth specific facts showing that there is a genuine issue for trial," and cannot rest on "mere allegations or denials" of the facts asserted by the movant. Rule 56(e), Fed. R. Civ. P. In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'" Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004).

An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. The Court must "view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the nonmoving party." Allen v. Coughlin, 64 F.3d 77, 79 (2d Cir. 1995) (quotations and citations omitted); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986). In reviewing a motion for summary judgment, the court must scrutinize the record, and grant or deny summary judgment as the record warrants. Rule 56(c), Fed. R. Civ. P. In the absence of any disputed material fact, summary judgment is appropriate. Id.

III.     Request to Reopen Discovery

The Court sees no reason to reconsider its prior decision denying Parker's application to reopen discovery. (Dec. 29, 2006 Order.) Summary judgment is inappropriate when the non-moving party has not "had the opportunity to discover information that is essential to his opposition [to summary judgment]." Anderson, 477 U.S. at 250 n.5. "But the

trial court may properly deny further discovery if the nonmoving party has had a fully adequate opportunity for discovery."  Trebor Sportswear Co., Inc. v. The Limited Stores, Inc., 865 F.2d 506, 511 (2d Cir. 1989) (citations omitted); see also, Allen v. City of New York, 480 F. Supp. 2d 689, 720-21 (S.D.N.Y. 2007) (denying motion to reopen discovery where pro se plaintiff was fully aware of the relevance of information in question during discovery, and could have developed information at that time).

From the outset of this litigation, Parker was made aware of the required elements of his false arrest and malicious prosecution claims and the requirements for bringing a claim against the City.  (Feb. 4, 2005 Order.)  There are no circumstances suggesting that Parker had anything less than a full opportunity to discover evidence relevant to his claims.  More than one year elapsed between the time Parker filed his amended complaint ("A.C.") and the time defendants filed their motion for summary judgment.  Parker has failed to present the Court with any satisfactory explanation as to why he needs additional time for discovery.  The discovery process has ended and will not be reopened.

IV.     Parker's Claims

A.     *Section 1983 Claims Against the City*

Parker's claims against the City do not survive defendants' motion for summary judgment.  A municipality can only be sued directly under section 1983 where the alleged constitutional violation "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or results from an unofficial governmental custom.  Monell v. Dept. of Soc. Serv., 436 U.S. 658, 690-91 (1978); see Reynolds v. Giuliani, 506 F.3d 183 (2d Cir. 2007).  Conclusory allegations of municipal liability will not suffice to defeat a motion for summary judgment on a Monell claim.  See

Singleton v. City of Newburgh, 1 F. Supp. 2d 306, 311-12 (S.D.N.Y. 1998) (to defeat a motion for summary judgment, a plaintiff must do more than simply recite allegations of municipal liability, he must come forward with evidence that the municipality, alerted to the possible use of excessive force by its officers, did nothing to rectify the situation).  Parker has set forth no facts that would support the conclusion that the individual defendants' actions were taken pursuant to an official policy or well-settled practice of the City.

In his opposition papers, Parker admits that his claims against the City are brought under the theory of *respondeat superior* and that he "fail[ed] to explicitly allege that the defendants' actions stemmed from a policy and custom that caused a deprivation of his constitutional rights."  (Pl. Opp. Mem. 34; see also, Parker Dep. 181-83.)  A *respondeat superior* theory of liability is insufficient to support Parker's federal claims against the City.  See Monell, 436 U.S. at 691 ("[A] municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory.").

In his opposition papers, Parker seeks to amend his complaint to properly plead the Monell factors and undertake discovery on those issues in the event the Court grants defendants' motion.  (Pl. Opp. Mem. 34.)  Leave to replead is denied.  The deficiency in Parker's claims against the City is not merely one of allegations, but of evidence.  Parker has made no showing that he has evidence or could obtain admissible evidence from which a reasonable jury could find in his favor on a Monell claim.

Parker was made aware by this Court, in February 2005, that, in order to maintain a Monell claim against the City, he would have to be able to demonstrate that the offenders' actions were the result of a policy or custom of the City.  (Feb. 4, 2005 Order 4-5.)

He has been given sufficient opportunity to develop an evidentiary record on his claims. He has not presented evidence which, if believed, would permit a reasonable jury to find in his favor on a section 1983 claims against the City.

B.  *Section 1983 Claims Against Kerik*

Parker's claims against Kerik do not survive defendants' motion for summary judgment. "It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994) (quoting Moffitt v. Town of Brookfield, 950 F.2d 880, 885 (2d Cir. 1991) (additional citations omitted)). Personal involvement of a supervisory official may be shown through evidence that: "(1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring." Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

Here, Parker has done nothing more than allege, in wholly conclusory fashion, that Kerik "fail[ed] to properly train, supervise, an or [sic] take steps to prevent the excessive use of force, upon the plaintiff, as such the defendant's [sic] exhibited a gross negligents [sic] and a deliberate indifference by inflicting an or [sic] causing plaintiff to be subject to an excessive use of force, causing a deprivation of plaintiff's [c]ivil and [c]onstitutionally secured rights 18 § 241, 42 § 1983." (A.C. "SECOND CLAIM.")

"The bare fact that [a defendant] occupies a high position in the New York prison hierarchy is insufficient to sustain [a] claim." Colon, 58 F.3d at 874. Parker points to no facts to suggest that Kerik either knew or should have known of the events of which Parker complains. Parker did not testify at his deposition about his claims against Kerik; and he does not address defendants' arguments with respect to Kerik in his opposition papers.

Parker has been given sufficient opportunity to develop an evidentiary record on his claims against Kerik. He has not presented any evidence through discovery or in response to defendants' summary judgment motion that would be sufficient to establish the requisite personal involvement that could support liability on the part of Kerik.

C.     *Section 1983 Claims Against the Individual Defendants*

In order to succeed on a claim for violation of civil rights under section 1983, a plaintiff must show that state officials, acting under color of state law, deprived him of a right guaranteed to him by the Constitution or federal law. Graham v. Henderson, 89 F.3d 75, 79 (2d Cir. 1996) (quoting 42 U.S.C. § 1983). Here, Parker's claims are predicated on allegations that he was subjected to an excessive use of force, and that he was then conspired against, falsely arrested, maliciously prosecuted and denied due process, all in violation of rights protected by the Eighth and/or Fourteenth Amendments. The Court will examine these claims in turn.

1.     Excessive Force

a.  *There are genuine issues of material fact for trial concerning the excessive force claim.*

Parker has alleged that Officers Medina and Fernandez engaged in the use of excessive force against him, in violation of the Eighth Amendment's prohibition against the infliction of cruel and unusual punishment. The Eighth Amendment, which is made applicable

to the states through the Fourteenth Amendment, <u>Estelle v. Gamble</u>, 429 U.S. 97, 101-02

(1976), is violated by unnecessary and wanton inflictions of pain and suffering, <u>Whitley v.</u>

<u>Albers</u>, 475 U.S. 312, 320 (1986).  The test of whether prison officials have violated the

Eighth Amendment by using excessive force is "whether force was applied in a good faith

effort to maintain or restore discipline, or maliciously and sadistically to cause harm."  <u>Hudson</u>

<u>v. McMillian</u>, 503 U.S. 1, 6-7 (1992).

   To establish an excessive force claim, an inmate must satisfy both subjective

and objective tests.  <u>Id.</u> at 7-8.  To satisfy the subjective test, the inmate must show that the

prison officials "had a 'wanton' state of mind when they were engaging in the alleged

misconduct."  <u>Davidson v. Flynn</u>, 32 F.3d 27, 30 (2d Cir. 1994) (citing <u>Hudson</u>, 503 U.S. at 7).

In analyzing whether such a showing has been made, courts may consider: "the need for the

application of force, the relationship between that need and the amount of force used, the

threat 'reasonably perceived by the responsible officials' and 'any efforts made to temper the

severity of a forceful response.'"  <u>Hudson</u>, 503 U.S. at 7 (quoting <u>Whitley</u>, 475 U.S. at 321).

   To satisfy the objective test, the inmate must show that the force applied was

"sufficiently serious" to establish a constitutional violation.  <u>Farmer v. Brennan</u>, 511 U.S. 825,

834 (1994) (quoting <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991) (additional citations omitted)).

This inquiry is "context specific, turning upon 'contemporary standards of decency.'"  <u>Griffin</u>

<u>v. Crippen</u>, 193 F.3d 89, 91 (2d Cir. 1999) (quoting <u>Blyden v. Mancusi</u>, 186 F.3d 252, 263 (2d

Cir. 1999)).  One of the factors to be considered is the nature and seriousness of any injury.

<u>See</u> <u>Branham v. Meachum</u>, 77 F.3d 626, 630 (2d Cir. 1996).  Although "a *de minimis* use of

force will rarely suffice to state a constitutional claim," <u>Romano v. Howarth</u>, 998 F.2d 101,

105 (2d Cir. 1993) (citation omitted), a plaintiff "need not prove 'significant injury' to make out an excessive force claim . . . ."  Griffin, 193 F.3d at 92.

Parker contends that Officers Medina and Fernandez used excessive force against him, violating his rights under the Eighth Amendment.  (A.C. "FIRST CLAIM," "SECOND CLAIM.")  In particular, Parker claims that Medina and Fernandez improperly punched and kicked him on his back, neck, shoulders and face, struck him with a baton, and lifted him off the ground by his handcuffed arms.  (Umoh Decl., Ex. AA, ¶ 6.)

The parties dispute whether the officers had a "wanton" state of mind, and whether the degree of force involved under the circumstances was serious.  On the issue of the officers' subjective intent, Parker contends, and the defendants deny, that he posed no threat and no force was needed.  (Pl. Opp. Mem. 28; Def. Mem. 23-24.)  Parker testified that the officers did not give him any direct orders during the altercation.  (Parker Dep. 127.)  Furthermore, although he admits that he resisted the handcuffs being placed on his right arm at the end of the altercation, he denies that he was resisting arrest during the entire incident.  If Parker's account of events is believed, then a jury could reasonably infer that the officers acted maliciously.

Defendants admit that there is a material factual issue in dispute with respect to the initial use of force, i.e., Parker's allegation that Medina struck him in the eye and pushed him without provocation.  (See Def. Mem. 22 n.9, 23 n.10.)  Defendants seek to have the jury separately consider the question of whether Parker or Medina was the initial aggressor, and seek summary judgment on the rest of the incident, which they characterize as the "restraining process."  But the initial aggression cannot be considered in isolation, because it is necessarily bound up with the question of whether "force was applied in a good faith effort to maintain or

restore discipline . . . ." Hudson, 503 U.S. at 6-7. Hence, the material facts are in dispute as to the subjective component of Parker's excessive force claim.[1] See Griffen, 193 F.3d at 91 ("Although [prisoner] appellant's excessive force claim is weak and his evidence extremely thin, dismissal of the excessive force claim was inappropriate because there are genuine issues of material fact concerning what transpired . . . ."); Ali v. Szabo, 81 F. Supp. 2d 447, 458 (S.D.N.Y. 2000) ("[B]ecause there is a material issue of fact as to whether any force was needed, the Court cannot determine whether the force allegedly used . . . reasonably correlates to the need for the application of force."); Johnson v. Doherty, 713 F. Supp. 69, 72 (S.D.N.Y. 1989) (summary judgment on an excessive force claim is inappropriate where there are disputed facts as to the context in which the incident occurred and the signs of provocation).

As to the objective component of the excessive force claim, there is also a substantial factual dispute. The application of force by Medina and Fernandez, if proven, would be sufficiently serious. Defendants have admitted to inflicting multiple punches to Parker's head and torso. (Jacobi Decl., Ex. M.) Parker need only prove that the force used was more than de minimis. See Griffin, 193 F.3d at 91.

Defendants are incorrect that the extent of Parker's injuries demonstrates such a modest use of force that defendants are entitled to summary judgment. To support their position, defendants point to the "Injury to Inmate Report," which states that Parker suffered only a superficial abrasion to his right eyebrow with swelling and discoloration, a superficial abrasion on the bridge of his nose, minor trauma, and an abrasion on his right knee. (Jacobi Decl., Ex. E.) Parker cites evidence indicating that he also suffered serious injury to his

---

[1] Defendants make much of the fact that Parker can not identify exactly when Fernandez struck him or what part of his body Fernandez made contact with. (See Def. Mem. 23-24.) But by Fernandez's own admission in the "Use of Force" report, he threw several punches at Parker. (Jacobi Decl., Ex. M.) Whether he was justified in doing so is a question for the jury to decide.

shoulders. If the shoulder problems resulted from the June 28 incident, Parker's condition could not be described as *de minimis.* Even if the shoulder problems were unrelated to the incident, the abrasions, swelling and trauma still present a triable issue of fact as to whether the degree of force was more than *de minimis.* See <u>Griffin</u>, 193 F.3d at 91-92 (reversing the grant of summary judgment on the ground that a bruised shin and swelling over one knee were not *de minimis* injuries).

In light of the parties' substantially different accounts of the events, material issues of fact exist as to the degree of force applied by Medina and Fernandez, and whether such force was justifiable under the circumstances. Accordingly, defendants' motion for summary judgment on the excessive force claim is denied.

      b.  *Defendants are not entitled to qualified immunity as to the excessive force claim.*

Defendants also argue that Medina and Fernandez are entitled to qualified immunity with respect to Parker's excessive force claim. "A government official is entitled to qualified immunity from suit for actions taken as a government official if (1) the conduct attributed to the official is not prohibited by federal law, constitutional or otherwise; (2) the plaintiff's right not to be subjected to such conduct by the official was not clearly established at the time of the conduct; or (3) the official's action was objectively legally reasonable in light of the legal rules that were clearly established at the time it was taken." <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 109 (2d Cir. 2000) (citations omitted). Objective reasonableness is established if "the only conclusion a reasonable jury could reach is that reasonable officers would disagree on the constitutionality" of the official's actions. <u>Cerrone v. Brown</u>, 246 F.3d 194, 203 (2d Cir. 2001).

Dismissal on the basis of a qualified immunity defense is not appropriate where "there are facts in dispute that are material to a determination of reasonableness." Thomas v. Roach, 165 F.3d 137, 143 (2d Cir. 1999); Ali, 81 F. Supp. 2d at 461 ("The Court cannot conclude as a matter of law that [the officers'] conduct was objectively reasonable since there are material issues of fact as to whether [plaintiff] was obeying the officers' order and who started the physical confrontation.").

For the same reason that defendants are not entitled to summary judgment on the merits of the excessive force claim (*i.e.*, because there is a disputed issue of fact as to the degree of force applied and whether such force was justified under the circumstances), they are not entitled to summary disposition of the claim on the basis of qualified immunity. See Hemphill v. Schott, 141 F.3d 412, 418 (2d Cir. 1998) ("[S]ummary judgment based either on the merits or on qualified immunity requires that no disputes about material facts remain . . . .") (citations omitted); Jeanty v. County of Orange, 379 F. Supp. 2d 533, 542 (S.D.N.Y. 2005) ("[T]he same genuine issues of material fact that preclude summary judgment on plaintiff's excessive force claim, also preclude application of the defense of qualified immunity at the summary judgment stage."); Dellamore v. Stenros, 886 F. Supp. 349, 352 (S.D.N.Y. 1995) (finding that material factual disputes exist on the issue of qualified immunity for the same reasons that the court denied the motion for summary judgment on the plaintiff's Eighth Amendment excessive force claim). Accordingly, defendants' summary judgment motion as to the excessive force claim on the ground of qualified immunity is denied.

### 2. Conspiracy

Defendants argue that they are entitled to summary judgment on Parker's section 1983 conspiracy claim. Parker does not address defendants' arguments in his

opposition papers.  Because Parker has failed to present evidence from which a reasonable jury could find in his favor, Defendants' motion for summary judgment on that claim is granted.

In order to make out a section 1983 conspiracy claim, a plaintiff must prove: (1) an agreement between two or more state actors, (2) to act in concert to inflict an unconstitutional injury, and (3) an overt act done in furtherance of that goal.  See Pangburn v. Culbertson, 200 F.3d 65, 72 (2d Cir. 1999).  Parker has not presented any evidence of an agreement between any of the defendants to inflict injury on Parker.  The mere fact that two or more individuals were involved in the events of which Parker complains does not establish a conspiracy.  Therefore, summary judgment is granted as to the civil conspiracy claim.

### 3.     False Arrest and Malicious Prosecution

Parker claims that he was falsely arrested, (Pl. Opp. Mem. 5-17), and maliciously prosecuted, (id. 18-25), in violation of his constitutional rights.  Section 1983 claims for false arrest and malicious prosecution are grounded in the Fourth Amendment.  A plaintiff does not have a claim for false arrest or malicious prosecution under section 1983 if, at the time of his arrest and prosecution, he is already in custody on other charges, because there is no deprivation of liberty interests.  See Holmes v. Grant, No. 03 Civ. 3426, 2006 WL 851753, at *13-*14 (S.D.N.Y. Mar. 31, 2006) ("[a]n inmate already incarcerated has not suffered any unconstitutional deprivation of liberty as a result of being charged with new criminal offenses"); accord Goncalves v. Reynolds, 198 F. Supp. 2d 278, 283 (W.D.N.Y. 2001) (noting that plaintiff could not state a claim for false arrest because, at the time of his arrest, he was already detained pursuant to earlier charges and based upon his prior convictions).  It is undisputed that, on the date he was arrested for the assault— July 26, 2001—Parker was already in state custody and in the middle of trial on unrelated

criminal drug charges.  (See Pl. Rule 56.1 Statement ¶¶ 76-77; Jacobi Decl., Ex. U.)  Parker

was convicted of those unrelated criminal charges in August 2001, and sentenced to four-and-

a-half to nine years in state custody.  (Jacobi Decl., Ex. Z)  The charges relating to the June 28

incident were subsequently dismissed.

This is not a case where the prisoner's period of incarceration was lengthened

as a result of new charges brought against him while he was in custody.  Cf., Allen, 480 F.

Supp. 2d at 717-18 (concluding that plaintiff alleged a sufficient deprivation of liberty where

he spent time in state custody as a result of state charges brought against him while he was

serving his federal sentence).  The only deprivation of liberty Parker can point to is his

obligation to appear in court in connection with the new charges brought against him.  (Pl.

Opp. Mem. 23-24.)  District courts in this Circuit have held that forced appearance at court

proceedings to defend against criminal charges does not give rise to a section 1983 cause of

action.  See Holmes, 2006 WL 851753, at *13-*14 (concluding that prisoner-plaintiff had not

been deprived of liberty for purposes of malicious prosecution claim where inmate was "being

charged with new criminal offenses and being forced to appear in court to defend himself");

Wright v. Kelly, No. 95 Civ. 0688H, 1998 WL 912026, at *3 (W.D.N.Y. Oct. 16, 1998)

(refusing to "find the fact that plaintiff was required to appear at court proceedings . . . to be a

deprivation of liberty of a constitutional dimension").

Thus, because Parker has not shown that he was deprived of a liberty interest in

violation of his constitutional rights, defendants' motion for summary judgment on the section

1983 false arrest and malicious prosecution claims is granted.

### 4.      Due Process

In their motion papers, defendants argue that they are entitled to summary

judgment on Parker's claims relating to the false misbehavior reports and the denial of parole. Parker does not address defendants' arguments in his opposition papers. The defendants' motion for summary judgment on the due process claims is granted, because Parker has failed to present evidence from which a reasonable jury could find in his favor.

In the amended complaint, Parker alleges that his due process rights were violated when defendants issued a false misbehavior report against him, resulting in his having to serve 120 days in a Special Housing Unit. (A.C. ¶ 13.) The filing of baseless charges against an inmate does not itself give rise to a constitutional violation. Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). An inmate "has no constitutionally guaranteed immunity from being falsely accused of conduct which may result in the deprivation of a protected liberty interest." Id. Rather, to maintain an actionable claim against correction officers for filing a false misbehavior report, a plaintiff must be able to show either: (1) that he was disciplined without adequate due process, as a result of the report; or (2) that the report was issued in retaliation for exercising a constitutionally protected right. See Freeman, 808 F.2d at 951-53 (reasoning that the filing of false charges is not a constitutional violation, as long as the prisoner is granted a hearing and given an opportunity to rebut the charges); Franco v. Kelly, 854 F.2d 584, 589-90 (2d Cir. 1988) (reversing grant of summary judgment where prisoner claimed that false disciplinary charges were filed against him as retaliation for his cooperation with a state investigation into alleged inmate abuse).

With respect to the false misbehavior reports, Parker does not suggest that they were in retaliation for the exercise of his constitutional rights. He does, however, claim that he was disciplined without adequate due process as a result of the reports. "[D]ue process requires that in a disciplinary hearing resulting in imposition of . . . solitary confinement, an

inmate must be afforded advance written notice of the charges against him and a written statement of fact findings supporting the disposition and reasons for the disciplinary action taken." <u>Kalwasinski v. Morse</u>, 201 F.3d 103, 108 (2d Cir. 1999) (citing <u>Wolff v. McDonnell</u>, 418 U.S. 539, 563-64 (1974)).  Parker asserts that he was not read his <u>Miranda</u> rights, he was not given the opportunity to make a statement, he was not given an opportunity to see the evidence against him, and the disciplinary proceedings were not recorded.  (Umoh Decl., Ex. AA ¶ 15-16.)  He also claims that he "never refused to sign the notice of infraction."  (<u>Id.</u> ¶ 15.)  At his deposition, however, Parker testified that he did, in fact, refuse to sign the notice of infraction.  (Parker Dep. Tr. 152.)  Parker also contradicted his allegation that he was not given the opportunity to make a statement prior to the imposition of his punishment.  (Parker Dep. Tr. 153-54 ("Q: Did you attempt to give your version of events at all? A: Yes, because he requested it. Q: What did you tell him? A: I told him basically that I didn't do any of the charges that I was charged and that was a bunch of fabrication. He chose to go the other way and found me guilty."))

        As for the alleged <u>Miranda</u> violation, it does not give rise to a federal due process claim because there is no evidence or even suggestion of coercion.  <u>See</u> <u>Jocks v. Tavernier</u>, 316 F.3d 128, 138 (2d Cir. 2003) ("<u>Miranda</u> violations, absent coercion, do not rise to the level of constitutional violations actionable under § 1983.")  As to his claims that the disciplinary hearing was not recorded and he was not given an opportunity to see the evidence against him, Parker is barred by the doctrine of collateral estoppel from re-litigating those issues, because he already contested them through an Article 78 proceeding, (Jacobi Decl. Ex. Q).  <u>See</u> <u>Giakoumelos v. Coughlin</u>, 88 F.3d 56, 59 (2d Cir. 1996) ("'Collateral estoppel in a subsequent § 1983 action is one of the risks' attendant to a decision to challenge a prison

disciplinary determination in a proceeding brought pursuant to Article 78") (citation omitted); see also, Rudolph v. Goord, __ F. Supp. 2d __, No. 9:01 CV 1549 (FJS/DEP), 2005 WL 1630022, at *2 (N.D.N.Y. July 11, 2005) (Scullin, J.) (finding that plaintiff was not required to pursue an Article 78 proceeding prior to bringing his section 1983 due process claim, and collateral estoppel was therefore not an inappropriate ground for granting summary judgment). There is no suggestion that Parker was denied a full and fair opportunity to litigate these issues.

With respect to the denial of parole, Parker alleges that the defendants' actions caused "harm to [his] reputation resulting from said accusation brought against him by examination by the York [sic] State Board of Parole." (A.C. "SECOND CLAUSE [sic] OF ACTION.") At his deposition, he alleged that defendants' accusations caused "a bad blemish on [his] record and as a result [he] was denied early release." (Parker Dep. 56.)

A prisoner does not have a constitutional right to parole. Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 7 (1979); Barna v. Travis, 239 F.3d 169, 171 (2d Cir.) (The New York parole system does not "create[ ] in any prisoner a legitimate expectancy of release."). A convicted person has no constitutional right to be conditionally released before the expiration of a valid sentence, and decisions by the state parole board are discretionary. Greenholtz, 442 U.S. at 7. An inmate's federally-protected liberty interest in parole release is "limited to not being denied parole for arbitrary or impermissible reasons." Brown v. Thomas, No. 02 Civ. 9257 (GEL), 2003 WL 941940, at *1 (S.D.N.Y. Mar. 10, 2003) (citing Meachum v. Fano, 427 U.S. 215, 226 (1976)). Parker has alleged neither arbitrariness nor capriciousness in the Parole Board's decision. Parker's only allegation is that the Parole Board improperly considered false accusations relating to the June 28 incident in reaching its

decision to deny him parole. However, Parker has presented no proof of any connection between the allegedly false accusations relating to the June 28 incident and the denial of early release. Furthermore, the documents presented by defendants indicate that it was Parker's extensive criminal history, and not the accusations relating to the June 28 incident, that formed the basis for the Parole Board's decision. Parker has offered no evidence which would permit a reasonable jury to find in his favor on this claim. Accordingly, summary judgment for defendants on Parker's due process claims is granted.[2]

### D.  *18 U.S.C. § 241 Claims*

Parker also cites section 241 of title 18 of the United States Code as an alternative or additional basis for some of his claims. (A.C. ¶¶ 1, 10, 12, 15, 18, "FIRST CLAIM," "SECOND CLAIM," "THIRD CLAIM.") Section 241 is a criminal conspiracy statute, making it a crime for two or more persons to conspire to deprive another of constitutional rights. The statute does not authorize civil suits or create civil liability. See Ippolito v. Meisel, 958 F. Supp. 155, 161 (S.D.N.Y. 1997). Thus, 18 U.S.C. § 241 does not provide a basis for Parker's claims, and any claims based on that statute that are not otherwise disposed of in this motion are dismissed.

### E.  *State Law Claims*

Defendants assert that Parker's state law claims are barred by New York General Municipal Law sections 50-e and 50-i, which establish a notice requirement and statute of limitations for actions against the city and its employees. These requirements apply

---

[2] I note that Parker's due process claim relating to the denial of parole may be barred by the principles underlying Heck v. Humphrey, 512 U.S. 477, 489 (1994) (a section 1983 plaintiff seeking damages for allegedly unconstitutional imprisonment must prove that the "conviction or sentence is reversed, expunged, invalidated, or impugned by the grant of a writ of habeas corpus.") I do not reach the issue because defendants did not address it.

equally to state tort claims brought as pendent claims in a section 1983 action.  See Warner v. Village of Goshen Police Dept., 256 F. Supp. 2d 171, 175 (S.D.N.Y. 2003).

Pursuant to N.Y. Gen. Mun. L. §§ 50-e and 50-i, plaintiffs asserting state tort law claims against a municipal entity or its employees acting in the scope of employment must (1) file a notice of claim within ninety days after the incident giving rise to the claim, and (2) commence the action within a year and ninety days from the date on which the cause of action accrues.  See N.Y. Gen. Mun. L. §§ 50-e and 50-i.[3]

It is difficult to ascertain from the amended complaint exactly what state law claims Parker is alleging in this action.  In contrast to the repeated references to 18 U.S.C. § 241 and 42 U.S.C. § 1983, the only explicit reference to New York state law is in connection with the conspiracy claim.  (See A.C. "THIRD CLAIM.")  However, Parker filed a Notice of Claim, which was mailed in September 2001, which asserted claims for assault, excessive force, personal injury, mental duress and pain and suffering.  (Pl. Rule 56.1 Statement ¶¶ 88-89.)  Defendants acknowledge that Parker's Notice of Claim might be interpreted as also including claims for false arrest and malicious prosecution.  (Def. Mem. 33.)

Most of Parker's claims, including his claims for assault and excessive force, accrued on June 28, 2001, the date of the physical altercation which led to his arrest.  If Parker's complaint is construed as asserting a common law false arrest claim, that claim is time-barred.  The statute of limitations for such a claim ordinarily runs from the date the

---

[3] Although § 50-i only refers to suits against "a city, county, town, village, fire district or school district," courts have consistently held that the statute of limitations applies to suits against city employees as well.  See Gonzalez v. City of New York, No. 94 Civ 7377 (SHS), 1996 WL 227824, at *2 (S.D.N.Y. May 3, 1996) ("Despite the [ ] seemingly plain language [of § 50-i], it applies not only to suits against municipal corporations but also to suits against 'officer[s], agent[s] or employee[s]' whose conduct has caused injury." (citing De Gradi v. Coney Island Medical Group, P.C., 172 A.D.2d 582, 583 (2d Dep't 1991) (alterations in original); Norr v. Spiegler, 72 A.D.2d 20, 22-23 (1st Dep't 1980)); see also, Robinson v. Matos, No. 97 Civ 7144 (TPG), 1999 WL 225938, at *2 (S.D.N.Y. Apr. 19, 1999) (noting that a plaintiff bringing a state law action against "a municipal entity or its employees" must comply with sections 50-e and 50-i).

plaintiff is released from custody.  See Salman v. Econo Lodge, 303 A.D.2d 923, 923 (4th Dep't 2003).  Here, Parker was not released from custody after his arrest, because he was already detained on charges unrelated to the June 28 incident.  For these purposes, the Court finds that the false arrest claim and any malicious prosecution claim both accrued on March 5, 2002, which is the date the prosecution dropped the charges relating to the June 28 incident.

Parker did not file his original complaint in this action until June 21, 2004— almost two years after his false arrest and malicious prosecution claims accrued, and almost three years after the rest of his state law claims accrued.  Thus, even assuming, *arguendo*, that Parker complied with the notice of claim requirement, these claims should be dismissed because they were not raised within the one year plus ninety day statute of limitations set forth in N.Y. Gen. Mun. L. § 50-i.

Conclusion

Defendants' motion for summary judgment is granted as to the section 1983 claims predicated on conspiracy, false arrest, malicious prosecution, and denial of due process and those claims are dismissed.  Summary judgment is also granted to defendants on the section 241 conspiracy claim, and that claim is dismissed.  Defendants' motion for summary judgment is granted as to all state law claims, and all state law claims are dismissed.  Defendants' motion for summary judgment is granted as to defendants Kerik and the City of New York, and all claims against those defendants are dismissed.  Defendants' motion is denied as to plaintiff's section 1983 claim against defendants Medina and Fernandez predicated on the use of excessive force.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
     January 7, 2008